**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3426
_____

UNITED STATES OF AMERICA

v.

KASSAR J. CHITOLIE,
a/k/a Fnu Lnu,
a/k/a Out Cast,
a/k/a  Sealed Defendant

Kassar J. Chitolie,
                              Appellant


_____


APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS
(D.C. No. 3-11-cr-00016-010)
District Judge: Honorable Curtis V. Gomez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 12, 2014
_____

Before: CHAGARES, JORDAN, and SHWARTZ, Circuit Judges.

(Filed: December 17, 2014)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Kassar Chitolie appeals his judgment of conviction and sentence. For the reasons that follow, we will affirm.

I

This case involves a drug distribution conspiracy in which Chitolie sold marijuana and cocaine to Herbert Ferguson, who then sold drugs to others. At trial, Ferguson testified that he bought marijuana from Chitolie, who he also knew as "Outcast," App. 456, two times per month in quantities "no less than a quarter pound[ and] no more than a half a pound," App. 544. The jury also heard wiretapped conversations between Ferguson and Chitolie about Chitolie's marijuana sales. In several calls, they discussed transactions involving "one girl," "Bob Marley," "green hat," "T-shirts," "green Christmas tree," "Reggie," and "Popcorn," all of which, Ferguson explained, were code words for marijuana. App. 650-52, 654-55. In other calls, Ferguson spoke with his son about meeting Chitolie to complete a marijuana purchase.

Ferguson also testified about Chitolie's cocaine sales and the jury heard wiretapped conversations about them. On one call, Chitolie told Ferguson that Chitolie had an "8-ball," code for four and a half ounces of cocaine, to supply to Ferguson. App. 653. On another call, Ferguson told Chitolie that he did not want "[t]he plate of food [Chitolie was] sending" to be "cook[ed]" and that Chitolie should "[j]ust send the food raw." App. 654. Ferguson explained that he was telling Chitolie that he did not want

2

cocaine base, but rather cocaine powder.

The jury convicted Chitolie of violating 21 U.S.C. §§ 841(a)(1), 843(b), and 846. The District Court sentenced him to concurrent terms of twenty-seven months' imprisonment for each of the counts as well as concurrent terms of supervised release. Chitolie appeals.

II[1]

A

Chitolie's assertion that there was insufficient evidence to support his convictions for conspiracy to possess with intent to distribute and possession with intent to distribute is without merit.[2]  To prove a conspiracy of the sort alleged here, the Government must show "(1) a shared unity of purpose; (2) an intent to achieve a common illegal goal; and (3) an agreement to work toward that goal." United States v. Caraballo-Rodriguez, 726 F.3d 418, 425 (3d Cir. 2013) (en banc).[3]  It "need not prove that each defendant knew all of the conspiracy's details, goals, or other participants," but must "proffer sufficient evidence from which a jury could have concluded that each drug transaction in which [the defendant] was involved was a step in achieving the conspiracy's common goal of

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[2] Chitolie does not challenge the sufficiency of the evidence supporting his conviction under 21 U.S.C. § 843(b).

[3] We exercise plenary review over an appeal from the grant or denial of a judgment of acquittal, reviewing the record "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." Caraballo-Rodriguez, 726 F.3d at 430 (quotation marks, alterations, and internal citations omitted).

distributing [drugs] for profit." United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999) (quotation marks and internal citations omitted).

Sufficient evidence supported Chitolie's conspiracy conviction. Ferguson testified that he bought marijuana and cocaine from Chitolie. Furthermore, they used coded language and Ferguson's son as a courier to facilitate the drug transactions. This demonstrated Chitolie's "repeated, familiar dealings with members of [the] conspiracy" and therefore provided sufficient evidence from which a jury could conclude that he "comprehend[ed] fully the nature of the group with whom he [wa]s dealing . . . and [that he was] more likely to perform drug-related acts for conspiracy members in an effort to maintain his connection to them." Gibbs, 190 F.3d at 199.

To prove possession with intent to distribute a controlled substance, the Government must prove "(1) knowing or intentional (2) possession (3) with intent to distribute (4) a controlled substance." United States v. Lacy, 446 F.3d 448, 454 (3d Cir. 2006). Here, the conviction is supported by ample evidence of Chitolie's sale of marijuana to Ferguson. Ferguson testified and recordings showed that he discussed the purchase of marijuana from Chitolie and that Ferguson's son in fact travelled to meet Chitolie and obtain marijuana. Therefore, sufficient evidence supports Chitolie's conviction for possession with intent to distribute a controlled substance and his contention otherwise is without merit.

B

Chitolie also has not shown that the District Court erred in limiting his ability to cross-examine Ferguson about the benefits of Ferguson's plea agreement. The Confrontation Clause does not provide an "unfettered right[] to cross-examine witnesses." United States v. Friedman, 658 F.3d 342, 356 (3d Cir. 2011). Instead, district courts "retain[] wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." United States v. John-Baptiste, 747 F.3d 186, 211 (3d Cir. 2014) (quotation marks, alterations, and internal citations omitted).

Here, the District Court limited inquiry about the specific sentence Ferguson would have faced absent his cooperation but permitted questions about whether Ferguson faced a "substantial" sentence. App. 739. As Ferguson and Chitolie faced similar charges and questions about the specific sentence Ferguson faced might therefore have influenced the jury's deliberations with improper considerations about Chitolie's potential sentence, there was no abuse of discretion. John-Baptiste, 747 F.3d at 212. Furthermore, contrary to Chitolie's assertions, the District Court permitted Ferguson to be cross-examined, within the proper confines of the hearsay rule, about the extent to which his plea agreement secured benefits for his wife and son. Indeed, Chitolie and his codefendants thoroughly cross-examined Ferguson about the benefits he received or

5

hoped to receive from his testimony. Thus, there was no improper limit on his cross-examination.

## C

Chitolie also contends that the District Court erred in admitting photographs of drugs found in Ferguson's home. Because Chitolie did not object, we review for plain error.[4] A district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. While Ferguson testified that the drugs depicted were provided by a different conspirator, not Chitolie, the photographs were nonetheless probative of Ferguson's role in the drug distribution chain and tended to make the existence of the conspiracy more probable. Thus, we cannot say that the prejudice flowing from the admission of the photographs substantially outweighed their probative value. Hence, there was no error, plain or otherwise, in admitting this evidence under Rule 403.

## D

Ferguson's recorded statements were also properly admitted as co-conspirator statements under Fed. R. Evid. 801(d)(2)(E). Under that rule, the District Court must

---

[4] Under the plain error standard, we will reverse only if (1) there was error; (2) the error was clear or obvious; (3) it affected the defendant's substantial rights; and (4) it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." United States v. Stinson, 734 F.3d 180, 184 (3d Cir. 2013) (quotation marks and internal citations omitted).

find by a preponderance of the evidence that "(1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) it was made in furtherance of the conspiracy."[5] United States v. Vega, 285 F.3d 256, 264 (3d Cir. 2002). "To prove these elements, the Government may rely on the co-conspirator's statements themselves, if they are corroborated by independent evidence." United States v. Turner, 718 F.3d 226, 231 (3d Cir. 2013).

Here, the District Court properly concluded that there was sufficient evidence of a conspiracy between Ferguson, his son, Chitolie, and others to admit Feguson's statements under Rule 801(d)(2)(E).[6] Moreover, any reliance on Ferguson's statements themselves in making that finding was not error as independent evidence corroborated the existence of a conspiracy, including Ferguson's in-court testimony that Chitolie sold him marijuana and cocaine and he sent his son to retrieve drugs from Chitolie. See United States v. Mitchell, 596 F.3d 18, 23 (1st Cir. 2010) (relying on cooperating witness's in-court testimony to corroborate that witness's out-of-court statements to establish existence of a conspiracy under Rule 801(d)(2)(E)); United States v. Console, 13 F.3d 641, 659-60 (3d

---

[5] We review the District Court's findings for clear error. United States v. Vega, 285 F.3d 256, 264 (3d Cir. 2002).

[6] Chitolie's claim that the District Court's ruling lacked the requisite findings also fails to provide a basis for relief. See United States v. Cruz, 910 F.2d 1072, 1081 n.11 (3d Cir. 1990) ("[T]he failure to make the explicit finding [of conspiracy] does not render the district court ruling reversible" where "the necessary threshold determination is implicit in the court's decision to send the case to the jury." (quotation marks and internal citation omitted)).

7

Cir. 1993) (relying on patient's testimony to corroborate doctor's out-of-court statements to establish existence of a conspiracy under Rule 801(d)(2)(E)). Ferguson's statements were also corroborated by admissions Chitolie made during the recorded conversations. Thus, the recorded statements were properly admitted under Rule 801(d)(2)(E).

E

Chitolie's assertion that his sentence violates Alleyne v. United States, 133 S. Ct. 2151 (2013), is also without merit. In Alleyne, the Supreme Court held that "'any fact that increases the mandatory minimum sentence is an "element" that must be submitted to the jury' and proved beyond a reasonable doubt." United States v. Winkelman, 746 F.3d 134, 135 (3d Cir. 2014) (quoting Alleyne, 133 S.Ct. at 2155) (internal alteration omitted). Therefore, where a fact, such as drug quantity, "trigger[s] a statutory mandatory minimum sentence[, it] must . . . be submitted to a jury." United States v. Smith, 751 F.3d 107, 117 (3d Cir. 2014). If, however, no statutory mandatory minimum sentence is triggered, the absence of an allegation in the indictment or a jury finding with respect to a fact that could otherwise trigger a mandatory minimum is irrelevant. Alleyne, 133 S. Ct. at 2159-60; United States v. Freeman, 763 F.3d 322, 336 (3d Cir. 2014). Furthermore, "factual findings made for purposes of applying the [Sentencing] Guidelines, which influence the sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in Alleyne . . . so long as the ultimate sentence imposed [is] within

8

the statutorily prescribed range." Freeman, 763 F.3d at 335-36 (quotation marks and internal citations omitted).

The offense for which Chitolie was convicted on Count One, conspiracy to possess with intent to distribute, is subject to a five-year mandatory minimum because the jury found that the conspiracy involved twenty-eight grams or more of cocaine base. 21 U.S.C. § 841(b)(1)(B)(iii). The District Court, however, did not attribute this amount to Chitolie, explaining that it did not find evidence to support Chitolie's involvement with cocaine base,[7] and sentenced him without a mandatory minimum, applying instead a statutory range of zero to twenty years' imprisonment pursuant to 21 U.S.C. § 841(b)(1)(C). Therefore, as Chitolie's twenty-seven month sentence did not involve a mandatory minimum and fell below the statutorily prescribed maximum, neither the indictment nor the jury was required to specify a drug quantity.[8] Freeman, 763 F.3d at 336.

---

[7] Neither party challenges the District Court's authority to decline to apply the mandatory minimum and reject the jury's finding based on its review of the evidence.

[8] The District Court also did not err in adopting the findings in the Presentence Report with respect to marijuana and cocaine quantities, as those findings were supported by a preponderance of the evidence, including testimony from Ferguson about his purchases from Chitolie. Stinson, 734 F.3d at 184 ("At sentencing, a district court must find facts that relate to application of the Guidelines by a preponderance of the evidence.").

F

Chitolie's assertion that the District Court erred in denying a downward role adjustment under U.S.S.G. § 3B1.2 also fails.[9] Section 3B1.2 permits a downward adjustment of a defendant's offense level if the defendant was "substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A). In determining whether this adjustment is warranted, district courts should consider "such factors as the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." United States v. Self, 681 F.3d 190, 201 (3d Cir. 2012) (quotation marks and internal citations omitted).

Here, the factors support the District Court's decision not to apply the adjustment. First, "the importance of [Chitolie's] actions to the success of the venture" is apparent. Id. Chitolie was a supplier of marijuana and cocaine and hence he "did not indirectly further a criminal activity or further that activity in some minor way" but "directly engaged in the very act at the heart of the criminal enterprise—namely, the distribution of drugs in exchange for money." Id. (upholding decision not to apply adjustment where defendant "merely carr[ied] out the instructions of his . . . brother" by "simply receiving the payment for a previously negotiated transaction"). Second, the frequency with which he supplied drugs to Ferguson, the fact that he supplied both marijuana and cocaine, and

_____

[9] We review a district court's interpretation of the Sentencing Guidelines de novo, findings of fact for clear error, and application of the Guidelines to facts for abuse of discretion. United States v. Kluger, 722 F.3d 549, 555 (3d Cir. 2013).

his interactions with Ferguson's son demonstrate his relationship to the other members of the conspiracy and his knowledge of the nature and scope of the venture.  This evidence supports the District Court's decision not to apply the downward adjustment.  Id. (finding factors did not support downward adjustment where defendant was entrusted with distributing "wholesale quantities of drugs worth hundreds of dollars").

### III

For the foregoing reasons, we will affirm.